IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COMMONWEALTH OF VIRGINIA *ex rel.*
INTEGRA REC LLC,

    **Plaintiff,**

v.                                            Civil Action No. 3:14CV706

COUNTRYWIDE SECURITIES
CORPORATION, *et al.*,

    **Defendants.**

### MEMORANDUM OPINION

This matter comes before the Court on the Motion to Transfer and Motion to Stay filed on October 24, 2014 by Countrywide Securities Corp. ("CSC") on behalf of the defendants, (ECF Nos. 15, 17), and the Motion to Remand and Request for Expedited Hearing filed on October 31, 2014 by the Commonwealth of Virginia (ECF No. 42). On January 9, 2015, the Court heard oral argument and these matters are ripe for disposition.

For the reasons that follow, the Court will grant, on a limited basis, CSC's Motion to Stay (ECF No. 17) and will defer ruling on CSC's Motion to Transfer Venue (ECF No. 15) and the Commonwealth's Motion to Remand (ECF No. 42).

### I. Procedural and Factual Background

Two other courts and a multijurisdictional panel have matters pending before them that potentially relate to the action removed to this Court. The Complaint at bar alleges misrepresentations in offerings of mortgage-backed securities ("MBS") or residential mortgage-backed securities ("RMBS"). The Court will address these pending matters seriatim.

A.  **The Virginia Circuit Court Action**

On January 24, 2014, Integra REC LLC, a private relator, filed suit in the Circuit Court of the City of Richmond (the "Virginia Circuit Court") under seal against 13 defendants,[1] including CSC. On September 16, 2014, the Commonwealth of Virginia filed a Complaint-in-Intervention to conduct the action itself. On the same date, the Virginia Circuit Court unsealed the case.

The Commonwealth's Complaint alleges violations of the Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 *et seq.* (West 2014), as well as common law claims for actual and constructive fraud.[2] The Commonwealth alleges that the defendants made fraudulent representations surrounding the sale of MBS or RMBS certificates backed by pools of mortgages, some of them residential. The Commonwealth contends that the defendants fraudulently misrepresented the quality and risk of the certificates and the mortgages that backed them, causing the Virginia Retirement System ("VRS")[3] to purchase the certificates on false pretenses and to suffer large losses. As to all 13 defendants, the Commonwealth claims that the misrepresentations caused approximately $383.91 million in losses to VRS.

---

[1] The original defendants in the state court action were: (1) Barclays Capital Inc.; (2) Citigroup Global Markets Inc.; (3) Countrywide Securities Corp.; (4) Credit Suisse Securities (USA) LLC ("Credit Suisse"); (5) Deutsche Bank Securities Inc.; (6) Goldman, Sachs & Co. ("Goldman Sachs"); (7) HSBC Securities (USA) Inc.; (8) J.P. Morgan Securities LLC; (9) Merrill Lynch, Pierce, Fenner & Smith Inc.; (10) Morgan Stanley & Co. LLC; (11) RBS Securities Inc. ("RBS"); (12) UBS Securities LLC ("UBS"); and, (13) WaMu Capital Corp.

[2] The Court recites only the portion of the Complaint that pertains to the action at bar.

[3] VRS maintains pension plans for Virginia public employees. As part of this management, it purchased 220 MBS certificates sold or caused to be sold by the defendants.

No responsive pleadings have been filed in the Virginia Circuit Court. The parties agreed to extend the responsive pleading deadline to January 20, 2015. No discovery has commenced in the Virginia Circuit Court.

### B. Potentially Related MDL Proceeding in California Federal Court

For the past several years in federal and state courts around the country, CSC has defended numerous cases with allegations it claims mirror those in this Court (the "Virginia Federal Court"). Many of these cases were consolidated in 2011 by the United States Judicial Panel on Multidistrict Litigation ("JPML") into a Multi-District Litigation ("MDL"), Case No. 2265. The JPML formed MDL No. 2265 to centralize cases concerning MBS issued or backed by Countrywide Financial Corporation ("CFC") and its related entities, including CSC. *In re: Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.* 812 F. Supp. 2d 1380, 1382 (J.P.M.L. 2011). Judge Mariana R. Pfaelzer has presided over MDL No. 2265 in the Central District of California (the "California Federal Court"). Since the formation of MDL No. 2265, additional cases have been added through the JPML's "tag-along" jurisdiction under 28 U.S.C. § 1407(a).[4]

---

[4] That statute states, in pertinent part:

(a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).

Other cases have been transferred to Judge Pfaelzer's Court in the Central District of California via 28 U.S.C. § 1404(a).[5]

This Court has reviewed numerous cases in which Judge Pfaelzer has ruled on facts similar to those presented in the case at bar. Those cases cover multiple federal and state statutes, motions to remand, and motions to dismiss. In 2011, Judge Pfaelzer approved a class action lawsuit that CSC contends encompasses 16 of the 22 MBS offerings at issue in this action.[6]

C.  **Removal to Virginia Federal Court**

On October 16, 2014, CSC and four of its affiliates[7] (the "Removing Defendants") removed to this Court, pursuant to 28 U.S.C. § 1452(a),[8] the portion of the Virginia Circuit Court action they say involves every MBS offering issued by CFC and its subsidiaries. Removing

---

[5] That statute states, in pertinent part: "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[6] *Luther v. Countrywide Fin. Corp.*, No. 12-cv-5125-MRP (MANx), *Western Conference of Teamsters Pension Trust Fund v. Countrywide Fin. Corp.*, No. 12-cv-5122-MRP (MANx), and *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-302-MRP (MANx), collectively "*Luther*" (class action settlement reached before Judge Pfaelzer).

[7] Credit Suisse, Goldman Sachs, RBS, and UBS join CSC in this removal action.

[8] That statute states, in pertinent part:

(a) A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

4

Defendants argue that this Court has jurisdiction over the present claims pursuant to 28 U.S.C. § 1334,[9] commonly known as "related to" jurisdiction because of its reliance on relation to a bankruptcy proceeding.[10] Courts find "related to" jurisdiction when an outcome "could conceivably have any effect on [an] estate being administered in bankruptcy." *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).[11] While the Commonwealth suggests any related to jurisdiction is attenuated, this Court need not make a final determination on that issue at this time.

---

[9] That statute states, in pertinent part, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C § 1334(b).

[10] CSC contends that 17 of the 22 MBS certificates at issue are "related to" bankruptcy proceedings. CSC asserts that the Court has supplemental jurisdiction over the claims surrounding the remaining five MBS offerings pursuant to 28 U.S.C. § 1367(a). Other courts have found supplemental jurisdiction in similar procedural circumstances. *See, e.g., Allen v. Kuhlman Corp.*, 322 B.R. 280, 283–85 (S.D. Miss. 2005) ("[E]ven were the claims against the other non-debtor defendants not sufficiently 'related to' [the] bankruptcy to bring them within the court's bankruptcy jurisdiction, it appears that the court would nevertheless have supplemental jurisdiction over the remaining claims pursuant to [Section] 1367 which it would choose to exercise.")

[11] The "conceivable effect" test applies to pre-confirmation bankruptcy proceedings. *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 836 (4th Cir. 2007) (discussing the *Celotex* and *Pacor* decisions). In post-confirmation bankruptcy proceedings the inquiry to determine jurisdiction becomes whether a "close nexus" exists to the bankruptcy plan or proceeding. *Id.* at 836–37. A "close nexus" typically exists when matters affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.*

### D.     Outstanding Motions in the Federal Litigation

#### 1.     Transfer Motion Pending with the JPML

On October 24, 2014, CSC filed with the JPML a Notice of Potential Tag-Along Action pursuant to JPML Rule 7.1.[12] (*In re: Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, ("*In re: Countrywide*"), No. 2:11-ml-2265 (J.P.M.L.), ECF No. 487.) After such a filing, the JPML may, among other options, issue a conditional transfer order ("CTO"). J.P.M.L. Rule 7.1(a). On October 29, 2014, the Clerk of the JPML signed a denial of a CTO, issuing a Notice to Counsel stating that "No action will be taken in this matter. . . . The Panel has determined that the continued transfer of tag-along actions to this docket is no longer appropriate and has suspended the parties' obligations under Panel Rule 7.1(a)."[13] (*In re: Countrywide*, ECF No. 491.)

After the CTO denial, as permitted by the JPML rules, CSC filed a motion to transfer the Virginia Federal Court action to MDL No. 2265 on a tag-along basis pursuant to JPML

---

[12] That rule provides, in pertinent part:

**(a) Notice of Potential Tag-along Actions.** Any party or counsel in actions previously transferred under Section 1407 shall promptly notify the Clerk of the Panel of any potential tag-along actions in which that party is also named or in which counsel appears.

J.P.M.L. Rule 7.1(a).

[13] Although the text of the Notice discusses the "Panel," CSC asserts that such denial of the tag-along was only a preliminary ruling by the Clerk of the Panel, and does not suggest the ruling the full panel will issue. The Commonwealth argues the CTO denial indicates the likelihood that the JPML will ultimately deny the transfer action altogether.

6

Rule 6.2.[14] On December 12, 2014, the JPML issued an order to consider CSC's motion, without oral argument, during a panel hearing on January 29, 2015. (*In re: Countrywide*, ECF No. 520.) CSC asserts that the JPML will issue a ruling on the motion shortly after the hearing date.

### 2. Transfer, Stay, and Remand Motions Pending In This Virginia Federal Court

Also on October 24, 2014, CSC moved this Court to transfer the action directly to the California Federal Court pursuant to Section 1404(a), or in the alternative, to stay the present case pending the JPML's determination regarding its inclusion into MDL No. 2265. (ECF Nos. 15, 17.) Defendants UBS, RBS, and Credit Suisse join in CSC's motion to stay. (ECF Nos. 22, 56, 67.)

On October 31, 2014, the Commonwealth moved to remand the case to the Virginia Circuit Court where the rest of its state court action remains pending. (ECF No. 42.) CSC and the Commonwealth filed responses and replies to the motions, and on January 9, 2015, the parties appeared for oral argument. Defendant Goldman Sachs orally joined CSC's motions during the January 9 hearing.

---

[14] That rule states, in pertinent part:

> **(a) Initiation of Transfer.** A party to an action may initiate proceedings to transfer under Section 1407 by filing a motion in accordance with these Rules. A copy of the motion shall be filed in each district court where the motion affects a pending action.

J.P.M.L. Rule 6.2(a).

7

Like the Virginia Circuit Court case, no discovery or other pretrial activity has commenced in this Virginia Federal Court. Neither the Virginia Federal Court nor the Virginia Circuit Court has seen a substantive answer, and neither court has scheduled pretrial events or set a trial date.

For the reasons articulated below, the Court will grant a 45-day stay of these proceedings while the JPML considers tag-along transfer into MDL No. 2265. Accordingly, the Court will defer ruling on the Motion to Transfer pursuant to Section 1404(a) filed by Removing Defendants and the Motion to Remand filed by the Commonwealth. (ECF Nos. 15, 42.) Any further ruling by this Court, if necessary, will commence on an expeditious basis.

## II. Analysis of the Motion to Stay

A district court possesses the inherent power to stay actions in the considerations of "'economy of time and effort for itself, for counsel, and for litigants.'" *Yearwood v. Johnson & Johnson, Inc.*, No. RDB-12-1374, 2012 WL 2520865, at *3 (D. Md. June 27, 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Williford v. Armstrong World Indus.*, 715 F.2d 124, 127 (4th Cir. 1983). Courts frequently grant stays while awaiting a JPML decision about the inclusion of a pending case into an MDL, even when other motions remain pending before the district court, including motions to remand. *Sehler v. Prospect Mortg., LLC*, No. 1:13cv473(JCC/TRJ), 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013); *Walker v. New England Compounding Pharmacy, Inc.*, Nos. 7:12-cv-564 & 7:12-cv-615, 2013 WL 1871343, at *2 (W.D. Va. May 3, 2013) (collecting cases); *Robinson v. DePuy Orthopaedics, Inc.*, No. 3:12-cv-00003, 2012 WL 831650, at *2 (W.D. Va. Mar. 6, 2012). The inherent power to rule on a motion to stay extends to cases in which jurisdictional objections exist. *See, e.g.*,

*Robinson*, 2012 WL 831650, at *1–2 (granting stay of case pending JPML decision despite question of diversity jurisdiction due to an allegedly fraudulently joined defendant); *Yearwood*, 2012 WL 2520865, at *3–4 (same). Therefore, the Court has the inherent power to rule on the motion to stay before addressing the motions to transfer and remand.

"In considering a motion to stay, a district court must 'weigh competing interests and maintain an even balance.'" *Sehler*, 2013 WL 5184216, at *2 (quoting *Yearwood*, 2012 WL 2520865, at *3). The court should consider three factors: "(1) whether judicial resources will be saved and duplicative litigation avoided if the case is consolidated in an MDL; (2) prejudice to the party opposing the stay; and[,] (3) the moving party's hardship and inequity if the action is not stayed." *Wood v. Johnson & Johnson*, No. WDQ-12-1572, 2012 WL 3240934, at *2 (D. Md. Aug. 3, 2012).

### A. The Conservation of Judicial Resources Favors a Brief Stay

When assessing judicial resources, a court should determine whether a stay would avoid the "'needless duplication of work and the possibility of inconsistent rulings.'" *Sehler*, 2013 WL 5184216, at *2 (quoting *Robinson*, 2012 WL 831650, at *2). The overall purpose of multidistrict litigation is to promote the "convenience of parties and witnesses and . . . the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Courts often stay cases awaiting a JPML decision on inclusion into an MDL to avoid "needless duplication of work." *Sehler*, 2013 WL 5184216, at *2 (citing *Robinson*, 2012 WL 831650, at *2). Otherwise, efforts taken by the transferor court would likely be "replicated by the judge that is assigned to handle the consolidated litigation[,]" should a transfer occur. *Id.* (citing *Rivers v. Walt Disney Co.*, 980 F.

Supp. 1358, 1361 (C.D. Cal. 1997)). Here, judicial resources would be saved if the JPML were to accept this action into MDL No. 2265.

First, CSC alleges that the *Luther* class action decided by Judge Pfaelzer should determine the outcome of this case. During oral argument, CSC argued that the *Luther* class covers 16 of the 22 securities in this action. CSC further contends that the California Federal Court sent notice of the *Luther* settlement to all state attorneys general, and that the Commonwealth is not listed among parties who opted out of the class. As such, CSC maintains that 16 of the offerings in this Virginia Federal Court action are released by the *Luther* settlement. The Commonwealth provided no specific response to these assertions in briefing or in oral argument. At this juncture, the Court will not assess whether the *Luther* settlement released the Commonwealth's claims, and the Court hesitates to usurp the power given to the JPML before it has had the opportunity to consider transfer of a potentially related matter.

Second, CSC argues that Judge Pfaelzer has ruled on dozens of cases involving the type of CFC-issued securities removed from the Virginia Circuit Court. Indeed, CSC contends that Judge Pfaelzer has presided over cases involving some of the exact MBS offerings in this case. The Court's initial review of the law suggests that CSC's assertions do not lack merit. Systemic efficiency would be served should the JPML decide to include these removed securities in MDL No. 2265.

Therefore, judicial economy weighs heavily in favor of granting the motion to stay, especially one lasting just 45 days so that the JPML can determine whether to accept the Virginia Federal Court action into MDL No. 2265.

### B. The Limited Potential Prejudice to the Commonwealth Favors a Brief Stay

The Court should next consider the prejudice to the nonmovant if a stay is granted. In so doing, courts have evaluated the progress of the case, the presence of pending motions, the length of delay proposed, and whether the action has been conditionally transferred to the MDL. *See Sehler*, 2013 WL 5184216, at *3–4 (denying stay when the discovery deadline was likely to occur before the JPML's decision, the stay would extend for more than four months, and no conditional transfer order had been entered); *Wood*, 2012 WL 3240934, at *2–3 (granting stay when a motion to remand was pending that was likely to be similar to others in the MDL, the stay would be for a "short" time, and a conditional transfer order had been entered).

First, both the Virginia Circuit Court case and the Virginia Federal Court case have only just commenced. No answers have been filed, no discovery has begun, and no trial date has been set. As such, the Commonwealth can claim little prejudice regarding the progress of the Virginia cases.

Second, the Court has discerned a means to efficiently handle the motions pending in this Virginia Federal Court. The Section 1407 hearing will occur on January 29, 2015, and the JPML will rule shortly thereafter. The Court will grant a stay of just 45 days so that the JPML can rule, and this case can proceed apace once the JMPL makes its decision.[15] The limited stay adequately addresses a third consideration this Court must weigh: the length of the delay.

---

[15] If the JPML accepts the action, CSC proffers that Judge Pfaelzer has a solid record of speedy rulings on preliminary motions, such as motions to remand. While the Commonwealth contests this characterization, this Court notes that Judge Pfaelzer has ruled on myriad motions to remand or to dismiss.

11

The fourth circumstance this Court evaluates, whether a CTO has been entered, would favor the Commonwealth. However, the JPML will decide whether to grant a tag-along transfer in a matter of weeks. Although the possibility remains that the JPML will not accept a tag-along transfer into MDL No. 2265, this Court will nonetheless be prepared to rule expeditiously on the pending motions in this Virginia Federal Court following the JPML's decision.[16] Accordingly, the limited prejudice to the Commonwealth weighs heavily in favor of granting the stay.

### C.  The Hardship to CSC Favors a Brief Stay

The Court must finally consider the hardship caused to CSC without a stay, including their "need to monitor and defend cases in multiple jurisdictions, on different schedules, when the cases may be consolidated to avoid that burden." *Wood*, 2012 WL 3240934, at *3; *see also Sehler*, 2013 WL 5184216, at *3. Potential hardship exists here because defendants affiliated with CFC find themselves in numerous cases across the country in varying stages of progress. In addition to arguing the benefit of systemic efficiency addressed above, CSC submitted a sworn declaration that CFC's former principal place of business operated out of the Central District of California. (Decl. Paul Liu 2, ECF No. 19.) In that declaration, the former CFC official stated that the bulk of the physical and electronic documents potentially at issue remain stored in the

---

[16] A motion to transfer pursuant to Section 1404 and a motion to remand remain pending on this Virginia Federal Court's docket. As noted during the January 9 hearing, the Court will grant the parties an opportunity to file ten-page additional briefs by January 20, 2015. The Court will also order the parties to file their positions on the JPML decision once it issues. The JPML position paper shall be limited to two (2) pages and should be filed with this Court within three (3) days of the notification of the JPML decision.
  This Court will be prepared to rule on the remaining motions to transfer and to remand expeditiously and without additional oral argument if the JPML denies CSC's tag-along transfer motion. This minimizes any prejudice from delay that would otherwise run against the Commonwealth.

Central District of California. (*Id.* at 4.) The CFC employees with knowledge of the MBS offerings at issue in the case at bar likely reside in or near the Central District of California. (*Id.* at 3.) Moreover, CFC no longer employs many of these people, placing them outside the subpoena power of a Virginia court. (*Id.*) While the Commonwealth suggests that some of these obstacles could be overcome, the potential hardship to CSC weighs in favor of a stay.

### III. Conclusion

This Court exercises its inherent power to grant a brief stay so that the JPML can make its determination on whether systemic judicial economy will be served by inclusion, on a tag-along basis, of this action in MDL No. 2265. A limited stay of 45 days conserves judicial resources, minimizes prejudice to the Commonwealth, and prevents hardship to CSC. For the reasons stated above, the Court will grant CSC's Motion to Stay. (ECF No. 17.) Accordingly, the Court will stay this action for 45 days from the date of this Memorandum Opinion and Order. Any further action necessary will flow from the finding of the JPML as articulated in this Memorandum Opinion and Order.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 1/14/2015
Richmond, Virginia